UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH HARVEY,<br><br>          Plaintiff,<br><br>     v.<br><br>J. BARBOUR,<br><br>          Defendant. | No. 2:12-cv-02029 KJM DB<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that defendant J. Barbour violated his First Amendment rights when she forced him to perform work duties inconsistent with an active medical chrono in retaliation for his verbal complaints and an inmate grievance that he filed. Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes the motion. For the reasons set forth below, defendant's motion should be granted.

**I.     Summary of Plaintiff's Allegations**

The allegations in the second amended complaint arise from an incident occurring at California State Prison in Solano, California in July 2011. Plaintiff alleges that he suffers from chronic back pain. In July 2011, plaintiff complained to defendant, his supervisor at his kitchen work assignment, that she appeared to favor younger inmates for paid work assignments. In

response to that complaint and an inmate grievance filed by plaintiff, defendant retaliated by ordering plaintiff to wash over 40 garbage cans. This was done despite the fact that defendant was "clearly aware" of plaintiff's chronic back pain and also despite being shown the medical chrono indicating plaintiff's need for light duty job assignments. As a result, plaintiff suffered further back injury.

**II.     Undisputed Facts**

In July 2011, plaintiff was housed at California State Prison in Solano, California. Sec. Am. Compl. ("SAC") at 2. Plaintiff worked in the kitchen, where his supervisor was Correctional Supervising Cook J. Barbour. Dep. of Pl. [ECF No. 53-2] at 9:4-16; Decl. of J. Barbour in Supp. of Mot. Summ. J. [ECF No. 53-2] ¶ 2.

As part of her duties, defendant Barbour supervised inmate workers in the kitchen, assigned them tasks, and determined who receives a pay number (the opportunity to get paid while working). Barbour Decl. ¶ 2; Pl.'s Dep. at 28:23-24. In determining who received pay numbers, defendant used criteria outlined in the California Code of Regulations, title 15, section 3041.1. Barbour Decl. ¶ 5. She denies considering an inmate's age when assigning pay numbers. Id.

Plaintiff, who worked in the kitchen for "a long time," began to notice that inmates who came after him where getting pay numbers on the first day on the job. Pl.'s Dep. at 10:2-4. Before plaintiff asked defendant about getting a pay number, plaintiff claims that she treated him "all right." Id. at 10:10-12. After his request for a pay number, plaintiff claims that defendant's demeanor towards him changed: "she got to acting, you know, not liking me." Id. at 10:4-5. Plaintiff claims that he asked her for a pay number a few times, and defendant's response was typically, "You don't work good enough" or "You don't deserve one." Id. at 10:10-24. Defendant also treated plaintiff poorly and locked him out of work assignments on July 4, 5, and 6, 2011. Id. at 10:6-12; 14:8-19. By "locked out," plaintiff meant that he would show up to work, but defendant would not let him work. See id. at 14:8-19.

At some point, plaintiff began to complain to defendant about her unprofessional behavior, saying things like, "Why is you singling me out[?]" Pl.'s Dep. at 27:22—28:5. Plaintiff,

however, does not remember when he made those complaints. See id. at 27:22—28:1; 37:20-23. He also admits that, while he did ask for a paying assignment, he did not tell defendant that he believed she was denying him paying opportunities because of his age. Id. at 11:18-22, 37:5-7.

Defendant denies that plaintiff ever complained to her about not receiving a pay number because of his age or that she favored younger workers. Barbour Decl. ¶ 5. Defendant also denies that plaintiff ever informed her that he would file an inmate grievance against her. Id. ¶ 7.

On July 6, 2011, plaintiff was working the lunch box crew. Barbour Decl. ¶ 3. When another officer needed the assistance of two or three inmates to clean out 40 trash cans, defendant ordered plaintiff to help. Id. Defendant states that she did not assign plaintiff to perform the work "because of any statements he made concerning my treatment of him." Id. ¶ 4. Plaintiff claims defendant ordered him to help because "[s]he didn't like [him]." Pl.'s Dep. at 27:18-21.

When plaintiff reminded defendant of his inability to perform the work because of his back, defendant allegedly dismissed his concerns, saying, "I don't think this will hurt you." Pl.'s Dep at 21:1-6. Fearing a write-up, plaintiff proceeded to the assignment. Id. at 11:21-22. The work required him to fill large garbage cans with water and to tilt the then-filled (and heavy) garbage cans to empty the water. Id. at 11:23-25. This work resulted in acute low back pain that forced plaintiff to visit the triage and treatment area on July 6 and 7, 2011. Id. at 21:18-25.

On July 17, 2011, plaintiff submitted an inmate grievance complaining of age discrimination by defendant and her unprofessional behavior towards plaintiff. Def.'s Mot. Summ. J. Ex. 2A [ECF No. 53-2 at 20-23].

On September 29, 2011, plaintiff's grievance was processed as a staff complaint. Def.'s Mot. Summ. J. Ex. 2A [ECF No. 53-2 at 24-25].

Plaintiff's grievance was denied at the third level of review on January 26, 2012. Def.'s Mot. Summ. J. Ex. 2A [ECF No. 53-2 at 18-19].

### III.   Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate when the moving party "shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

3

1    of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation,
2    627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
3    The moving party may accomplish this by "citing to particular parts of the materials in the record,
4    including depositions, documents, electronically stored information, affidavits or declarations,
5    stipulations (including those made for purposes of the motion only), admissions, interrogatory
6    answers, or other materials" or by showing that such materials "do not establish the absence or
7    presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
8    support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

9    When the non-moving party bears the burden of proof at trial, "the moving party need
10   only prove that there is an absence of evidence to support the nonmoving party's case." Oracle
11   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
12   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
13   against a party who fails to make a showing sufficient to establish the existence of an element
14   essential to that party's case, and on which that party will bear the burden of proof at trial. See
15   Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
16   nonmoving party's case necessarily renders all other facts immaterial." Id. In such a
17   circumstance, summary judgment should be granted, "so long as whatever is before the district
18   court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

19   If the moving party meets its initial responsibility, the burden shifts to the opposing party
20   to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec.
21   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
22   existence of this factual dispute, the opposing party typically may not rely upon the allegations or
23   denials of its pleadings but is required to tender evidence of specific facts in the form of
24   affidavits, and/or admissible discovery material, in support of its contention that the dispute
25   exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must
26   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
27   suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
28   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is not 'pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citing Guidroz—Brault v. Mo. Pac. R.R. Co., 254 F.3d 825, 829 (9th Cir. 2001)). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 586-87 (citation and internal quotation marks omitted).

**IV.  Discussion**

    **a.  Legal Standard**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory

1   conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson,
2   408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in
3   order to state a claim for retaliation: (1) prison officials took adverse action against the inmate;
4   (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse
5   action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a
6   legitimate penological purpose. See Rhodes, 408 F.3d at 568.

        **b. Analysis**

7   The gravamen of plaintiff's First Amendment claim is that defendant ordered him to clean
8   the trash bins in retaliation for plaintiff's verbal complaints about not receiving paying
9   assignments and for his filing of an inmate grievance concerning her.
10  As an initial matter, there is no dispute that plaintiff's inmate grievance was filed after the
11  incident underlying this case. Because defendant's conduct preceded plaintiff's protected
12  conduct, plaintiff's retaliation claim fails insofar as it is premised on the filing of the inmate
13  grievance.
14  The remaining question is whether plaintiff's verbal complaints to defendant about not
15  receiving a paying assignment and complaints about her unprofessional behavior amount to
16  protected conduct within the meaning of the First Amendment. For the reasons set forth below,
17  the Court concludes that they do not.
18  Although neither the Ninth Circuit nor the Supreme Court has decided whether a
19  prisoner's verbal complaints constitute protected activity, at least some district courts, including
20  some in this Circuit, have found that such verbal complaints do qualify as protected activity. See,
21  e.g., Ahmed v. Ringer, No. 2:13-cv-1050 MCE DAD P, 2015 WL 502855, at *4 (E.D. Cal. Feb.
22  5, 2015) ("[T]he court finds that plaintiff's verbal complaint about the July 2, 2012 search and
23  seizure of his property constitutes protected conduct under the First Amendment for purposes of a
24  retaliation claim."), report and recommendation adopted, 2015 WL 1119675 (E.D. Cal. Mar. 11,
25  2015); West v. Dizon, No. 2:12-cv-1293 MCE DAD P, 2014 WL 794335, at *5 (E.D. Cal. Feb.
26  27, 2014) ("The First Amendment's protection in this context is not limited to the form
27  submission of a complaint against a prison staffer."), report and recommendation adopted, 2014

WL 1270584 (E.D. Cal. Mar. 26, 2014); Carter v. Dolce, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) ("Once a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right."); Conkleton v. Muro, No. 08-cv-2612-WYD-MEH, 2011 WL 1119869, at *3 (D. Colo. Mar. 28, 2011) (finding that "verbal articulation ... of an intent to file a grievance" is constitutionally protected speech); see also Merrick v. Ellis, No. 5:15-cv-1052 MMM (GJS), 2015 WL 9999194, at *5–6 (C.D. Cal. Nov. 30, 2015) ("Without deciding the issue, the Court has reason to doubt that the form of a grievance is a proper distinction to be drawn in terms of a 'clearly established right.' "), report and recommendation adopted, 2016 WL 447796 (C.D. Cal. Feb. 4, 2016).

In each of these contexts, the protected conduct was a verbal complaint indicating an intent to report the defendant's conduct. Here, in contrast, there is no evidence that plaintiff's complaints to defendant about not receiving a paying assignment or her unprofessional behavior included an indication that he intended to file a grievance about the issue(s) or otherwise report these incidents to someone. In addition, plaintiff, who bears the burden of proof on this issue, has come forward only with speculation as to when he made the verbal complaints to defendant, and, even then, it is not clear if he complained to defendant or merely asked for paying assignments.

It is indeed possible, as plaintiff suggests, that he and defendant had an acrimonious relationship, which included defendant acting unprofessionally towards him and telling other inmates not to speak to him. But that relationship, standing alone, does not establish a dispute of material fact as to whether defendant retaliated against plaintiff for protected conduct. That is to say, even if defendant ordered plaintiff to wash out the garbage cans because she disliked him, that conduct is not enough to impose liability on her under the First Amendment. The only way that liability may be imposed is if defendant ordered plaintiff to wash out the garbage cans *because of* protected conduct. But as discussed supra, plaintiff did not engage in protected conduct within the meaning of the First Amendment before he was ordered to wash out the garbage bins. Summary judgment should therefore be entered for defendant. In light of this

recommendation, the Court declines to consider defendant's argument that he is entitled to qualified immunity.

### V. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 53) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 15, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/harv2029.msj